United States District Court
for the
Eastern District of New York

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION<br><br>        Plaintiff<br><br>    v.<br><br><br>TIMOTHY GREGG, NASSAU COUNTY CLERK<br><br>        Defendant(s) | )<br>)<br>)  Civil Action No. 19-cv-861<br>)<br>)  **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff, by its attorneys Gross Polowy, LLC, for its complaint against the Defendants allege as follows:

## INTRODUCTION

1.      This action is brought pursuant to New York Real Property Actions and Proceeding Law (RPAPL) Article 13, to foreclose a Mortgage encumbering 533 Clarendon Road, Uniondale, NY 11553, together with the land, buildings, and other improvements located on the Property ("Property").  The legal description of the Property is attached as Schedule B.

## PARTIES

2.      Plaintiff is incorporated under the laws of the State of New Jersey with its principal place of business at 907 Pleasant Valley Avenue, Suite 3, Mount Laurel, NJ 08054. Plaintiff is the owner and holder of the subject Note and Mortgage or has been delegated authority to institute this Mortgage foreclosure action by the owner and holder of the subject Note and Mortgage. Attached here as Schedule A is a copy of the original consolidated note.

3.      Defendant Timothy Gregg is a citizen of New York, and the owner of the Property.

4.      Defendant Nassau County Clerk is a county agency existing under the laws of New York with its principal place of business in New York, and the holder of a lien encumbering the Property, which is subject and subordinate to Plaintiff's Mortgage.

5.      The Defendants claim an interest or lien encumbering the Property, which is either subordinate to Plaintiff's Mortgage, or paid in full, equitably subordinated, or adverse to Plaintiff's Mortgage.  The interest or lien of each defendant is attached as Schedule C.

6.      The interest or lien of any governmental entity is attached as Schedule D.

## STATEMENT OF JURISDICTION

7. Federal subject matter jurisdiction exists pursuant to 28 USC §1332 because complete diversity exists among the Plaintiff and the Defendants and the amount in controversy, without interest and costs, exceeds the $75,000.00.

## VENUE

8. Venue is proper pursuant to 28 USC §1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

9. On January 31, 2017, Timothy Gregg executed and delivered a Note whereby Timothy Gregg promised to pay the sum of $315,933.00 plus interest on the unpaid amount due.

10. As security for the payment of the Note Timothy Gregg duly executed and delivered a Mortgage, in the amount of $315,933.00 which was recorded as follows:
Recording Date: March 20, 2017
Book 41992/Page 587
Nassau County Clerk

11. The Mortgage was assigned to Mortgage Electronic Registration Systems, Inc. as nominee for Freedom Mortgage Corporation.

12. On October 19, 2017, Timothy Gregg executed and delivered a Note whereby Timothy Gregg promised to pay the sum of $3,000.63, plus interest on the unpaid amount due.

13. As security for the payment of the Note Timothy Gregg duly executed and delivered a Mortgage, in the amount of $3,000.63 which was recorded as follows:
Recording Date: November 10, 2017
Book 42494/Page 289
Nassau County Clerk

14. Said Mortgage was consolidated with the Mortgage referred to in Book 41992, Page 587 by a Consolidation, Extension and Modification Agreement executed by Timothy Gregg dated October 19, 2017 and recorded November 10, 2017 in Book 42494, Page 313 in the Office of the Nassau County Clerk to form a single lien in the amount of $315,408.00.

## AS AND FOR A FIRST CAUSE OF ACTION, PLAINTIFF HEREIN ALLEGES

15. Timothy Gregg failed to make payment in accordance with the terms of the Note and Mortgage by not making the payment that was due on August 1, 2018 and subsequent payments.

16. There is now due and owing on the Note and Mortgage the following amounts:
Principal Balance: $311,420.02
Interest Rate: 3.75%
Date Interest Accrues from: July 1, 2018
together with late charges, monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure.

17. In order to protect the value of the Property and its rights in the Property, the Plaintiff may have to pay taxes, assessments, water charges, insurance premiums, and other charges. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

18. Plaintiff has complied with the notice provision of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Banking Law and any rules or regulations promulgated thereunder, and, if applicable, Sections 6-l or 6-m of the Banking Law.

19. No action was brought to recover any part of the Mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

**AS AND FOR A SECOND CAUSE OF ACTION,
PLAINTIFF HEREIN ALLEGES**

20. Repeats and realleges the allegations contained in Paragraphs "1" through "18" as though fully set forth herein.

21. Through inadvertence and mistake, the Deed recorded on March 20, 2017 in Book 13485, Page 504 in the Office of the Nassau County Clerk, Mortgage recorded on March 20, 2017 in Book 41992, Page 587 in the Office of the Nassau County Clerk, New Money Mortgage recorded on November 10, 2017 in Book 42494, Page 289 in the Office of the Nassau County Clerk, Assignment of Mortgage recorded on November 10, 2017 in Book 42494, Page 311 in the Office of the Nassau County Clerk and Consolidation, Extension and Modification Agreement recorded on November 10, 2017 in Book 42494, Page 313 in the Office of the Nassau County Clerk being foreclosed herein was indexed against Lot 240. It was the intent of the parties to encumber the property as described in said legal description, and the Deed recorded on March 20, 2017 in Book 13485, Page 504 in the Office of the Nassau County Clerk, Mortgage recorded on March 20, 2017 in Book 41992, Page 587 in the Office of the Nassau County Clerk, New Money Mortgage recorded on November 10, 2017 in Book 42494, Page 289 in the Office of the Nassau County Clerk, Assignment of Mortgage recorded on November 10, 2017 in Book 42494, Page 311 in the Office of the Nassau County Clerk and Consolidation, Extension and Modification Agreement recorded on November 10, 2017 in Book 42494, Page 313 in the Office of the Nassau County Clerk should have been indexed against Lots 240, 252.

22.     As such, the Plaintiff requests that the Nassau County Clerk's Office index the Deed recorded on March 20, 2017 in Book 13485, Page 504 in the Office of the Nassau County Clerk, Mortgage recorded on March 20, 2017 in Book 41992, Page 587 in the Office of the Nassau County Clerk, New Money Mortgage recorded on November 10, 2017 in Book 42494, Page 289 in the Office of the Nassau County Clerk, Assignment of Mortgage recorded on November 10, 2017 in Book 42494, Page 311 in the Office of the Nassau County Clerk and Consolidation, Extension and Modification Agreement recorded on November 10, 2017 in Book 42494, Page 313 in the Office of the Nassau County Clerk against Section 34, Block 389, Lot 240, 252 by Order of this Court as contained in a clause in the Order of Reference stating the following:

**WHEREFORE, PLAINTIFF DEMANDS**:
a. Judgment accelerating the maturity of the debt and determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest;
b. A referee be appointed to sell the Property at auction to the highest bidder, in accordance with to RPAPL Article 13;
c. The interest of the defendants and all persons claiming by or through them be foreclosed and their title, right, claim, lien, interest or equity of redemption to the Property be forever extinguished;
d. The Plaintiff be paid out of the sale proceeds the amounts due for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property, and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, and that the sale proceeds be distributed in accordance with to RPAPL Article 13;
e. The property be sold in as is condition, subject to the facts an inspection or accurate survey of the Property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America;
f. Plaintiff may purchase the Property at the sale;
g. A receiver be appointed for the Property, if requested by Plaintiff;
h. A deficiency judgment against Timothy Gregg, to the extent allowable by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was discharged in a bankruptcy or is otherwise uncollectable, be granted if requested by Plaintiff;
i. If the Plaintiff possesses other liens against the Property, they not merge with the Mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale;
j. Directing the Nassau County Clerk's Office to index the Deed recorded on March 20, 2017 in Book 13485, Page 504 in the Office of the Nassau County Clerk, Mortgage recorded on March 20, 2017 in Book 41992, Page 587 in the Office of the Nassau County Clerk, New Money Mortgage recorded on November 10, 2017 in Book 42494, Page 289 in the Office of the Nassau County Clerk, Assignment of Mortgage recorded on November 10, 2017 in Book 42494, Page 311 in the Office of the Nassau

      County Clerk and Consolidation, Extension and Modification Agreement recorded on November 10, 2017 in Book 42494, Page 313 in the Office of the Nassau County Clerk against Section 34, Block 389, Lot 240, 252;

k. That the Court award Plaintiff additional relief that is just, equitable and proper.

Dated: February 8, 2019  
       Westbury, New York

By:  
/SJV/  
Stephen J. Vargas, Esq.  
Attorneys for Plaintiff  
900 Merchants Concourse, Suite 201  
Westbury, New York 11590-5114  
Tel.: (716) 204-1700

## **Schedule A**

Attached here as Schedule A is a copy of the original consolidated note. If applicable, certain non-public personal information has been redacted from the attached document.

MIN
MERS Telephone ███

**ORIGINAL**

This Note amends and restates in their entirety, and is given in Substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

# Consolidated Note

FHA Case No. ███

October 19, 2017
*(Date)*

IVYLAND
*(City)*

PA
*(State)*

533 Clarendon Rd
Uniondale, NY 11553
*(Property Address)*

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $ 315,408.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Freedom Mortgage Corporation

    I will make all payments under this Note in the form of cash, check or money order.

    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.750%.

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

    **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the 1st day of each month beginning on December 1, 2017 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on March 1, 2047 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at PO Box 89486, Cleveland, OH 44101-9486
    or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $ 1,478.72 .

4. **BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

    (A) **Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C) **Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D) **No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E) **Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender requires Immediate Payment in Full under this Section 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 14 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
Timothy Gregg                   -Borrower

_____ (Seal)  
                                -Borrower

_____ (Seal)  
                                -Borrower

_____ (Seal)  
                                -Borrower

(Sign Original Only)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

**Loan Origination Organization:** Freedom Mortgage Corporation  
**NMLS ID:** 2767  
**Loan Originator:** Michael Anthony Petito  
**NMLS ID:** 1431254

Pay to the order of

_____
without recourse this _____ day of _____ 20 _____
Freedom Mortgage Corporation

*Maria Gallucci* (signature)

_____
Maria Gallucci
Corporate Secretary

## Schedule B – Legal Description

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Uniondale, Town of Hempstead, County of Nassau and State of New York, known as and by the Lot No. 140 and the Northerly 20 feet of Lot 141 and Southerly 3 feet of Lot 139 on a certain map entitled, "Map of Hempstead Manor, Section 5, situated at Hempstead, Nassau County, N.Y., property of O.L. Schwencke Land and Investment Co., Surveyed in 1907 by Smith Malcolmson, Civil Engineer" and filed in the Office of the Clerk of the County of Nassau on December 19, 1907 as Old Map No. 89, New No. 1022, which said lots when taken together are more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Easterly side of Clarendon Road, distant 172.30 feet Northerly from the corner formed by the intersection of the Easterly side of Clarendon Road with the Northerly side of Jerusalem Avenue, as widened;

RUNNING THENCE Easterly at right angles to the Easterly side of Clarendon Road, 100 feet;

THENCE Northerly parallel with the Easterly side of Clarendon Road, 48 feet;

THENCE Westerly again at right angles to the Easterly side of Clarendon Road, 100 feet to the Easterly side of Clarendon Road;

THENCE Southerly along the Easterly side of Clarendon Road, 48 feet to the point or place of BEGINNING.

## Schedule C-Defendants

Timothy Gregg                                    Borrower

## **Schedule D – Defendants**

| | |
|---|---|
| Nassau County Clerk | Named to be jurisdictionally joined as a party defendant for the relief requested in plaintiff's third cause of action. |